**SWANSON BROADCASTING, INC. & Hugh Barr, Appellants,**

v.

**CLEAR CHANNEL COMMUNICATIONS, INC., Appellees.**

No. 04–88–00102–CV.

Court of Appeals of Texas, San Antonio.

May 25, 1988.

Rehearing Denied July 7, 1988.

Gale R. Peterson, J. Kevin Parker, Cox & Smith, San Antonio, for appellants.

Judith R. Blakeway, Matthews & Branscomb, San Antonio, for appellees.

Before BUTTS, DIAL and CHAPA, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a temporary injunction enjoining appellants from using KAJA's direct mail pieces (flyers) in their radio promotion (radio station contest) until final judgment is entered.

Clear Channel and Swanson operate competitive radio stations KAJA and KCYY, respectively, in San Antonio. It is undisputed that the radio stations compete for listeners and advertising dollars. The radio stations depend upon advertisers who buy commercial time on the air. More commercial air time is purchased from those stations with proven large listening audiences. Advertisers place their commercials with those stations which pull high ratings.

In evidence are the *Birch* and *Arbitron* surveys which reflect station-by-station ratings based on the size of the listening audience (market share). Those survey companies conducted "sweeps" of all San Antonio radio stations January through March, 1988. The general manager of KCYY testified that their chief competition was KAJA and that KCYY had adapted the same format as KAJA.

In January, 1988, KAJA purchased advertising space in 300,000 direct mail flyers sent to San Antonio households by an advertising company (ADVO). The flyers featured four KAJA "checks" each bearing serial numbers and marked in amounts ranging from $97.00 to $10,000.00. The numbered "checks" were part of a KAJA radio sweepstakes contest designed to increase the KAJA listening audience during the "sweeps" period, encouraging them to listen at specified times to determine whether they held winning numbers entitling them to cash prizes. In January KCYY began its own contest. Initially, KCYY's contest specifically referred to and was based entirely upon the KAJA flyer. The KCYY contest used the same 9–digit serial numbers on the KAJA flyer and listeners could win a "Y100 dollar bill" if they held that other radio station's flyer with that number.

The KAJA contest was entitled "Texas Pay-off." The registration of the mark has been applied for with the State of Texas. The KCYY contest was entitled "The TNT Morning Pay-off". In advertising their contest KCYY referred to "flyers mailed out by the other radio station" and awarded their prizes if the listener presented a radio station flyer with the 9–digit number called on KCYY. KCYY expended no money on flyers and mailed no flyers of its own. KAJA provided evidence that its efforts and money created the promotion, including the flyers. It is undisputed that KCYY expended no efforts and money to create its promotion or flyers used.

KAJA filed suit, and a temporary restraining order was issued after a hearing, prohibiting KCYY "from broadcasting any part of plaintiff's official 'Texas Pay-off'

promotion, including but not limited to check or serial numbers...." Subsequent to the temporary restraining order, KCYY changed its contest to use a three digit randomly generated number. Listeners could win if they held any type of material received in the mail having a serial number which contained the announced number. In advertising the revised version of the contest KCYY changed the name of their contest to "Y100 Serial Sweepstakes" and made no specific references to KAJA's radio station flyers or to "the other radio station".

A temporary injunction hearing was conducted on February 8 and 9, 1988. The trial court entered a temporary injunction prohibiting appellants "from using KJ97's direct mail pieces ... in their promotion to redeem prizes until judgment in this cause is entered by this court."

Appellant raises nine points of error alleging that the trial court erred in granting a temporary injunction prohibiting redemption of the flyers because: 1. appellee does not own and has no legal right to control the use of the flyers; 2. appellee's cause of action for "misappropriation" is preempted by federal statute and the supremacy clause of the United States Constitution; 3. the trial court misapplied the law of "misappropriation" to establish facts, and therefore abused its discretion; 4. there is no evidence to support the order of the trial court in enjoining that redemption; 5. there is insufficient evidence to support the order of the trial court enjoining the redemption; 6. the pleadings and evidence show that the appellants had a legal right to redeem the flyers in issue; 7. the pleadings and evidence show that the appellee had an adequate remedy at law; 8. the pleadings and evidence show that appellee does not have a probable right to relief upon a trial on the merits of this cause because appellee does not own and has no legal right to control the flyers at issue and its cause of action for "misappropriation" is preempted by Federal statute and the Supremacy Clause of the United States Constitution; and 9. appellee failed to show probable, irreparable injury pending a trial on the merits of this cause.

■ The scope of appellate review of an order granting a temporary injunction is limited to the ultimate question whether the trial court abused its discretion in issuing the injunction. *Nicholson v. National Motor Club of Texas, Inc.*, 498 S.W.2d 264, 267 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *Norrell v. National Motor Club of Texas, Inc.*, 498 S.W.2d 257, 263 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *Langford v. Kraft*, 498 S.W.2d 42, 48 (Tex.Civ.App.—Beaumont 1973, writ dism'd). The appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order. Accordingly, the merits of the underlying cause are *not* presented for appellate review. Consideration on appeal is strictly limited to the question whether the court clearly abused its discretion. *Davis v. Huey*, 571 S.W.2d 859, 861–62 (Tex.1978). Those points raised by appellant which are more appropriate to a review of the cause on the merits will, therefore, not be addressed.

■ In determining whether there has been abuse of discretion in granting or denying temporary injunction, the court of appeals must draw all legitimate inferences from evidence in the light most favorable to the trial court's judgment. *David v. Bache Halsey Stuart Shields, Inc.*, 630 S.W.2d 754, 757, (Tex.App.—Houston [1st Dist.] 1982, no writ); *Hartwell's Office World v. Systex Corporation*, 598 S.W.2d 636, 638–639 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). The grant of a temporary injunction is an abuse of discretion where the evidence fails to establish a reasonable basis for deciding the applicant has a probable right of recovery. *Jobe v. Watkins*, 458 S.W.2d 945, 948 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.).

Plaintiff's original petition alleged infringement of the "Texas Pay-off" mark, unfair competition in that the public listeners would be confused, misled and deceived by the similarity of name and numbers used in defendant's promotion, and misappropriation of plaintiff's promotional activities. In accordance with TEX.R.CIV. PROC. 683 (Vernon Supp.1988) the court set forth the reasons for issuing the temporary injunction:

... The court finds and concludes that plaintiff will probably prevail on the trial of this cause; that Swanson Broadcasting, Inc. and Hugh Barr, defendants herein, intend to make use of the direct mail pieces from KJ97's official "Texas Pay-off" promotion as soon as possible and before the court can render judgment in this cause; that if Swanson Broadcasting, Inc. and Hugh Barr carry out this intention, they will thereby alter the status quo and tend to make ineffectual a judgment in favor of Clear Channel Communications, Inc., plaintiff, and plaintiff will suffer irreparable injury to wit: there will be confusion caused about plaintiff's sponsorship of the program and the promotion, plaintiff will lose the benefit of its investment in the promotion and plaintiff may lose market share and thereby advertising and advertising revenue and suffer harm to its competitive position in the market, and unless defendants, Swanson Broadcasting, Inc. and Hugh Barr, are deterred from carrying out that intention, Clear Channel Communications, Inc. will be without any adequate remedy of law because the damages suffered by it will be impossible to calculate.

■ We address the question whether the trial court abused its discretion in issuing the temporary injunction. The question to be considered by the trial court in considering a request for temporary injunction is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending appeal on the merits. *Davis v. Huey, supra* at 862; *Houston Belt & Term. Ry. Co. v. Texas & New Orleans R. Co.*, 155 Tex. 407, 289 S.W.2d 217, 219 (1956). To establish a right to an issuance of temporary injunction, applicant need only show a probable right and a probable injury; he is not required to establish that he will finally prevail in the litigation. *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953); *Vargas v. Mott*, 499 S.W.2d 905, 906 (Tex.Civ.

App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

 Unfair competition is use or simulation by one person of the name, symbols, or devices of a business rival in such a manner as is calculated to deceive and cause the public to trade with the first when they intended to and would otherwise have traded with the second. *Avnet v. Texas Centennial Central Exposition*, 96 S.W.2d 685, 687 (Tex.Civ.App.—Dallas 1936, writ dism'd.) The doctrine of unfair competition rests on the broad equitable principle that no person may sell or advertise his own business or goods as those of another. *McCarley v. Welch*, 170 S.W.2d 330, 332 (Tex.Civ.App.—Dallas 1943, no writ).

██ In this case defendant KCYY had adopted a contest name, "TNT Morning Pay-off", somewhat similar to the mark claimed by KAJA, "Texas Pay-off". From the use of a similar contest name combined with the fact that the KCYY contest initially used only KAJA's flyers mailed out by KAJA in connection with its own promotion the trial court could infer there was the possibility of confusion or deception with respect to ownership and sponsorship of the promotional contest. At the time of the temporary injunction hearing KCYY used the flyers of KAJA, as well as, other business' coupons containing numbers. The trial court enjoined the use of the flyers. It is not material that the KAJA mark, "Texas Payoff" was not registered but that an application for registration is pending. The trial court heard the testimony and could enter its temporary order to preserve the status quo based on the showing of probable confusion or deception of the public. The applicant need only show a probable right and a probable injury. *Transport Co. of Texas v. Robertson Transports, Inc., supra* 152 Tex. at 552, 261 S.W.2d 549. The court was not required to find either intent or actual deception in order to find in favor of the unfair competition claim. *Jud Plumbing Shop On Wheels, Inc. v. Jud Plumbing and Heating Co., Inc.*, 695 S.W.2d 75, 78 (Tex. App.—San Antonio 1985, no writ); *Line*

*Enterprises, Inc. v. Hooks & Matteson Enterprises, Inc.*, 659 S.W.2d 113, 117 (Tex. App.—Amarillo 1983, no writ).

As noted, subsequent to the temporary restraining order of January 29, 1988, and still within the "sweeps" period, defendant modified its contest, eliminating specific references to plaintiff's contest and broadening the category of winning serial numbers. Any mail-out with a serial number, including KAJA's flyers, could qualify. The trial court could have inferred that KCYY's revised contest, "Y100 Serial Sweepstakes" continued to make unfair use of the flyers. The trial court acted to prevent the further use of the KAJA promotion by enjoining the continued redemption of any KAJA flyers in the KCYY contest. The status quo to be preserved by a temporary injunction is the last, actual, peaceful and non-contested status which preceded the controversy. *Langford v. Kraft, supra* at 48 citing *Transport Co. of Texas v. Robertson Transport, supra* 152 Tex. at 553–554, 261 S.W.2d 549.

We will not substitute our judgment for that of the trial court. In entering its temporary order to preserve the status quo pending final disposition, the court acted well within its broad discretionary powers.

The order of temporary injunction is affirmed.